**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRIANNE SULLIVAN, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VANGUARD PARKING SOLUTIONS, INC., *et al.*<br><br>Defendants. | Case No.: 1:26-cv-02015-TNM<br>Judge Trevor N. McFadden |

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions Inc. ("Vanguard") moves under Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, to compel Plaintiffs Brianne Sullivan, Charles "Pat" Vaillant, and Ashley Albright to arbitrate their claims against Vanguard on an individual basis and to stay this action pending arbitration. The motion is supported by the accompanying Declaration of Mendy Goldman and its exhibits. If the Court concludes that a genuine issue of fact exists concerning contract formation, Vanguard alternatively requests a prompt, limited trial under Section 4 and a stay of all merits and class proceedings in the interim.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION ........................................................ 1

FACTUAL BACKGROUND ........................................................ 2

A. The facilities displayed written parking agreements that defined acceptance and required arbitration. ........................................................ 2

B. Each Plaintiff alleges a parking session governed by one of those agreements. ................ 4

C. The online Terms were presented at the point of each notice search and required individual arbitration. ........................................................ 5

LEGAL STANDARD ........................................................ 5

ARGUMENT ........................................................ 6

I. District of Columbia law governs Sullivan's agreements, and Maryland law governs Vaillant's and Albright's agreements. ........................................................ 6

II. The posted facility agreements were formed and are enforceable under the law governing each facility. ........................................................ 8

III. Plaintiffs' claims fall within the arbitration provisions. ........................................................ 10

IV. Plaintiffs independently formed online arbitration agreements under the law governing their notice transactions. ........................................................ 11

V. Plaintiffs' contract-wide attacks do not defeat the arbitration provisions under either State's law. ........................................................ 13

VI. The arbitrable claims must proceed only on an individual basis. ................................ 14

VII. The FAA requires a stay pending arbitration. ........................................................ 14

VIII. Alternatively, any genuine formation dispute requires a prompt, limited Section 4 trial. ........................................................ 15

CONCLUSION ........................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2200 M St. LLC v. Mackell*,
940 A.2d 143 (D.C. 2007) ....................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................14

*Bailey v. Thompson Creek Window Co.*,
No. 21-2345, 2023 WL 4679460 (4th Cir. July 27, 2023)....................13

*Bode & Grenier, LLP v. Knight*,
808 F.3d 852 (D.C. Cir. 2015)....................6, 7

**Brant v. Parking Revenue Recovery Servs., Inc.*,
No. 1:25-cv-01771-GPG-NRN, ECF No. 36 (D. Colo. Apr. 14, 2026) ....................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................14

*Chambers v. NASA Fed. Credit Union*,
222 F. Supp. 3d 1 (D.D.C. 2016)....................6

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*,
378 Md. 139, 835 A.2d 656 (2003) ....................7, 10, 13

*Cochran v. Norkunas*,
398 Md. 1, 919 A.2d 700 (2007) ....................9

*County Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*,
358 Md. 83, 747 A.2d 600 (2000) ....................9

**Crostarosa v. LAZ Parking Ltd.*,
No. 1:25-cv-00211-NYW-KAS, 2026 WL 183469 (D. Colo. Jan. 23, 2026)....................10

*Davis v. Winfield*,
664 A.2d 836 (D.C. 1995) ....................8

**Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025) ....................12, 13

*Ekstrom v. Value Health, Inc.*,
68 F.3d 1391 (D.C. Cir. 1995)....................8

*Forrest v. Verizon Commc'ns, Inc.*,
805 A.2d 1007 (D.C. 2002) ....................................................................................8

**Gambo v. Lyft, Inc.*,
642 F. Supp. 3d 46 (D.D.C. 2022) ....................................................................11

*Jin v. Parsons Corp.*,
966 F.3d 821 (D.C. Cir. 2020) ....................................................................6, 15

*Johnson v. Continental Fin. Co., LLC*,
131 F.4th 169 (4th Cir. 2025) ...............................................................7, 10, 14

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ..........................................................................................14

*Marshall v. Georgetown Memorial Hospital*,
112 F.4th 211 (4th Cir. 2024) ......................................................................12, 13

*Masurovsky v. Green*,
687 A.2d 198 (D.C. 1997) ..................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..............................................................................................15

*Muriithi v. Shuttle Express, Inc.*,
712 F.3d 173 (4th Cir. 2013) ..............................................................................11

*Osvatics v. Lyft, Inc.*,
535 F. Supp. 3d 1 (D.D.C. 2021) .....................................................................6, 15

*Parker v. K&L Gates, LLP*,
76 A.3d 859 (D.C. 2013) ....................................................................................10

*Porter v. Gen. Boiler Casing Co.*,
284 Md. 402, 396 A.2d 1090 (1979) ...................................................................9

**Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021) ...........................................................................6, 11

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ..........................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ..........................................................................................14

*The Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*,
170 F.3d 191 (D.C. Cir. 1999) ..............................................................................6

**Tobey v. Ace Parking Mgmt., Inc.*,
No. 3:24-cv-02932-X, 2025 WL 1919887 (N.D. Tex. July 11, 2025) ....................................10

*Walther v. Sovereign Bank*,
386 Md. 412, 872 A.2d 735 (2005) ..........................................................................13

*Williams v. Walker-Thomas Furniture Co.*,
350 F.2d 445 (D.C. Cir. 1965) ..............................................................................13

*Woodroof v. Cunningham*,
147 A.3d 777 (D.C. 2016) ...................................................................................13

**Statutes**

9 U.S.C. § 2..........................................................................................................5

Federal Arbitration Act ..........................................................................................1

**Other Authorities**

Restatement (Second) of Conflict of Laws section 188...............................................1, 6

## INTRODUCTION

This motion involves three Plaintiffs, two facilities, and two bodies of state contract law. Brianne Sullivan's alleged parking transaction occurred at 1515 New York Avenue NE in the District of Columbia. Charles "Pat" Vaillant's and Ashley Albright's alleged transactions occurred at 275 West Street in Annapolis, Maryland. The Federal Arbitration Act supplies the enforcement command, but state law determines whether each arbitration agreement was formed and, where relevant, how its scope and defenses are analyzed.

District of Columbia choice-of-law rules require a transaction-specific analysis. They blend governmental interests with the Restatement (Second) of Conflict of Laws section 188 contacts, including the place of contracting and performance, the location of the contract's subject matter, and the parties' domiciles and places of business. Those contacts point to District of Columbia law for Sullivan's District-centered facility and portal transactions, and to Maryland law for Vaillant's and Albright's Annapolis-centered transactions. That division also respects the facility contracts themselves: The 1515 contract selects the substantive law of the jurisdiction where the facility is located, while the 275 agreement invokes the FAA but contains no contrary state-law selection.

Both jurisdictions enforce contracts accepted by objective conduct. Under District law, Sullivan accepted the posted 1515 Parking Contract by parking and remaining after the contract identified the offer, stated that parking constituted assent, and directed a nonconsenting driver to exit. Under Maryland law, Vaillant and Albright accepted the posted 275 Parking Agreement in the same manner. Maryland's additional requirement that an arbitration promise itself be supported by mutual obligation is also satisfied: The 275 clause binds both sides to arbitrate covered disputes and contains no unilateral right allowing Vanguard to avoid that promise.

The online agreements provide an independent basis for arbitration. Sullivan used the notice portal after an adjacent statement informed her that, "By searching, you agree to our Privacy Policy and Terms of Service." District law and D.C. Circuit precedent enforce that form of sign-in-wrap notice. Vaillant used the same interface for his Maryland notice; the Fourth Circuit's online-formation cases likewise treat adjacent, action-linked notice as sufficient while distinguishing interfaces that hide terms or fail to connect the user's click to assent. Albright received that notice and then affirmatively checked a separate agreement box before her dispute could be submitted.

Each Plaintiff's claims fall within at least one binding arbitration agreement. Sullivan's 1515 clause covers statutory, tort, consumer-protection, and information-use claims arising from parking. Vaillant's and Albright's claims arise under or in connection with the 275 Parking Agreement. Independently, all three Plaintiffs assented to online Terms that require individual arbitration of any claim arising out of or relating to the Terms, the Parking Agreement, the Services, or any Parking Charge, and authorize the arbitrator to award the same individual relief available in court.

The Court should therefore compel all claims against Vanguard to individual arbitration and stay all proceedings against Vanguard. If Plaintiffs produce competent evidence creating a genuine dispute about formation, Section 4 requires a prompt trial limited to formation, with merits and class proceedings stayed in the interim.

## FACTUAL BACKGROUND

### A. The facilities displayed written parking agreements that defined acceptance and required arbitration.

Vanguard provides license-plate-recognition monitoring and parking-enforcement services at the garage located at 1515 New York Avenue NE, Washington, D.C., and the garage located at

275 West Street, Annapolis, Maryland. Goldman Decl. ¶¶ 4-6. The Complaint itself reproduces the agreements and alleges where they were displayed. Compl. ¶¶ 30-38, 42-53.

At 1515 New York Avenue, the sign was headed "PARKING CONTRACT - PRIVATE PROPERTY" and warned: "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." Goldman Decl. ¶ 7. It stated that "[b]y parking here, you agree to the terms of this Contract" and gave a driver fifteen minutes to leave. Id. ¶ 8. The face of the sign separately disclosed binding arbitration and jury and class waivers. Id. ¶ 9. For ease of reference, the operative arbitration language states:

> EXCEPT AS OTHERWISE REQUIRED BY APPLICABLE STATE LAW, ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES BETWEEN YOU AND VANGUARD ARISING FROM YOUR PARKING AT THE FACILITY OR UNDER THIS CONTRACT, INCLUDING ANY DISPUTES OR CLAIMS BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ADMINISTERED BY THE AAA UNDER ITS CAR RULES. THE SUBSTANTIVE LAW OF ANY ARBITRATION SHALL BE THE LAWS OF THE STATE IN WHICH THE FACILITY IS LOCATED. YOU AND VANGUARD AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE PROCEEDING, UNLESS VANGUARD AGREES OTHERWISE, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. AN ARBITRATOR CAN AWARD DAMAGES AND RELIEF AS A COURT WOULD.

At 275 West Street, the agreement likewise stated that, "[b]y entering and parking in this parking facility, you agree to the terms and conditions of this Parking Agreement" and that a nonconsenting driver "must exit this parking facility and park in a different location." Goldman Decl. ¶¶ 11-12. Under the heading "NOTICE OF ARBITRATION," the agreement states:

> ANY DISPUTE OR CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT, OTHER THAN A CLAIM FOR INJUNCTIVE RELIEF, SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION, CONDUCTED BY AN ARBITRATOR IN PALM BEACH COUNTY, FLORIDA, OR THE COUNTY AND STATE WHERE THE

> PARKING FACILITY IS LOCATED. THIS AGREEMENT SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT, IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN IN EFFECT.

**B. Each Plaintiff alleges a parking session governed by one of those agreements.**

Sullivan alleges that she personally entered the 1515 New York Avenue garage on November 15, 2025, remained for approximately eighty-six minutes, and later received Notice 4BA75. Compl. ¶¶ 69-78. She alleges that she accessed Vanguard's website and submitted an online dispute on November 25, 2025. Id. ¶¶ 79-89. Vanguard's records confirm the notice-specific search and dispute, Fair Recovery Adjudication conversation 15047. Goldman Decl. ¶¶ 23-26. Vanguard later cancelled the notice on April 20, 2026; Sullivan paid nothing. Id. ¶ 26.

Vaillant alleges that he personally parked at 275 West Street on November 8, 2025 and paid $5.70 through the third-party ZipBy application. Compl. ¶¶ 90-101. He later received Notice 49E72 and used Vanguard's website to dispute it on November 16 and December 3, 2025 and to communicate by live chat on December 18, 2025. Id. ¶¶ 102-19. Vanguard's records confirm those notice-specific activities, including conversations 14563, 15609, and 16609. Goldman Decl. ¶¶ 27-30. The notice remains unpaid. Id. ¶ 30.

Albright alleges that she personally parked at 275 West Street on February 19, 2026, paid $5.70 through the third-party ParkMobile application, later received Notice 6364C, and used Vanguard's website to dispute it on April 19, 2026. Compl. ¶¶ 120-35. Vanguard's records confirm the dispute, conversation 23994. Goldman Decl. ¶¶ 31-35. Before the website would submit that dispute, Albright had to check the box stating that she had read and agreed to the Terms and Privacy Policy. Id. ¶¶ 19, 33. She later paid the notice by a mailed check dated May 27, 2026; she did not pay through Vanguard's online payment page. Id. ¶ 35.

**C. The online Terms were presented at the point of each notice search and required individual arbitration.**

During the relevant period, the notice-search page placed the assent sentence immediately adjacent to the search button and hyperlinked the Terms and Privacy Policy. Goldman Decl. ¶¶ 14-18. Vanguard's records show that, throughout the relevant period, the substantive arbitration provisions material to this motion have remained the same: mandatory binding AAA arbitration governed by the FAA, individual-only proceedings, jury-trial and class-action waivers, and authority for the arbitrator to award the same individual relief available in court. Id. ¶¶ 20-21. The current Terms provide:

> SUBJECT TO THE EXCEPTIONS BELOW, ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES BETWEEN YOU AND VANGUARD PARKING REGARDING THESE TERMS OR THE SERVICES, WHICH ARE NOT AMICABLY RESOLVED, SHALL BE SETTLED THROUGH BINDING ARBITRATION (RATHER THAN IN COURT) BY TELEPHONE, ONLINE OR BASED SOLELY UPON WRITTEN SUBMISSIONS WITHOUT IN-PERSON APPEARANCE, IF APPLICABLE, ADMINISTERED BY AMERICAN ARBITRATION ASSOCIATION (AAA), UNDER ITS CONSUMER ARBITRATION RULES. THE SUBSTANTIVE LAW OF ARBITRATION SHALL BE THE LAWS OF THE STATE OF FLORIDA. JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

Sullivan's and Vaillant's late-2025 dispute forms did not themselves contain the later checkbox. Their online assent rests on the adjacent search-page notice and their decision to search for and use the resulting notice services. Goldman Decl. ¶ 18. Albright received the same search-page notice and then separately checked an express agreement box before submitting her dispute. Id. ¶¶ 19, 32-33.

## LEGAL STANDARD

The FAA makes a written arbitration agreement "valid, irrevocable, and enforceable" on the same grounds as any other contract. 9 U.S.C. § 2. Section 4 directs the Court to compel arbitration when satisfied that an agreement was made and has not been honored. Id. § 4. Federal

law supplies the FAA's enforcement rules; ordinary state contract law governs formation. *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021).

A motion to compel arbitration is evaluated under a summary-judgment framework. The movant must produce evidence sufficient to establish an enforceable agreement; the opponent must then identify competent evidence creating a genuine dispute of material fact. *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021). If no genuine dispute exists, the Court compels arbitration. If one exists, Section 4 requires the Court to "proceed summarily to trial" on formation. *Jin v. Parsons Corp.*, 966 F.3d 821, 827-29 (D.C. Cir. 2020).

For the state-law questions, this Court applies District of Columbia choice-of-law principles. In the absence of an effective choice by the parties, District law uses a "constructive blending" of governmental-interest analysis and the Restatement section 188 most-significant-relationship test. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 864 (D.C. Cir. 2015); *The Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193-95 (D.C. Cir. 1999). The relevant contacts are the place of contracting, negotiation, and performance; the location of the subject matter; and the parties' domiciles and places of business. *Bode & Grenier*, 808 F.3d at 864. Separate transactions may be governed by different states' laws. *See Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 6-8 (D.D.C. 2016).

## ARGUMENT

### I. District of Columbia law governs Sullivan's agreements, and Maryland law governs Vaillant's and Albright's agreements.

The Court first asks whether the potentially applicable laws materially differ. If they do not, District law applies by default. *Chambers*, 222 F. Supp. 3d at 6. If a true conflict exists, the Court weighs the section 188 contacts and each jurisdiction's interest in the issue. *Goldberg*, 170 F.3d at 193-95. The place of performance and the location of the contract's subject matter carry

particular weight where the contract grants access to or services at a specific property. *See Bode & Grenier*, 808 F.3d at 864-65.

District and Maryland law agree on the basic objective-assent inquiry, but Maryland imposes a distinctive formation rule for arbitration: The arbitration promise itself must contain mutual obligation and cannot be rendered illusory by an unrestricted unilateral modification right. *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 147-61, 835 A.2d 656, 661-69 (2003); Noohi v. Toll Bros., Inc., 708 F.3d 599, 609-14 (4th Cir. 2013); *Johnson v. Continental Fin. Co., LLC*, 131 F.4th 169, 176-82 (4th Cir. 2025). That potential difference makes it prudent to identify the governing law for each agreement rather than collapse the analysis.

Every transaction-specific contact points to the District. Sullivan is a District resident; she alleges that she entered, parked, and received the benefit of the parking license at a District facility; the sign and physical subject matter were located there; and the alleged monitoring and parking breach originated there. Compl. ¶¶ 13, 69-89. The facility clause independently confirms that result by selecting the substantive law of the jurisdiction where the facility is located. Goldman Decl. ¶ 10. The later portal activity concerned that same District parking session and expressly incorporated the facility contract, so its center of gravity likewise remains in the District.

The Maryland contacts are equally decisive for Vaillant and Albright. Both are Maryland residents; each alleges entry, parking, payment activity, and performance at the Annapolis facility; the contract's subject matter is Maryland real property; and the relevant garage owner is a Maryland entity. Compl. ¶¶ 14-15, 19, 39-53, 90-136. The 275 agreement invokes the FAA but contains no state-law clause displacing Maryland formation law. Goldman Decl. ¶ 13. Their later portal sessions were notice-specific continuations of those Maryland transactions and incorporated

the facility agreement. Maryland therefore has the most significant relationship and the strongest regulatory interest.[1]

## II. The posted facility agreements were formed and are enforceable under the law governing each facility.

For Sullivan, District law asks whether the parties objectively manifested an intent to be bound through words or conduct, not whether one party later says she subjectively read or understood every term. *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). A party given a reasonable opportunity to review written terms generally is bound despite failing to read them. *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010-12 (D.C. 2002). Conduct may establish assent even without a signature. *Davis*, 664 A.2d at 838.

The 1515 sign made the offer and the method of acceptance explicit. It identified itself as a "PARKING CONTRACT," stated that parking constituted agreement, warned "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW," and allowed fifteen minutes to leave. Goldman Decl. ¶¶ 7-10. Sullivan accepted the offered license to use private property by parking and remaining instead of exiting. The reciprocal exchange supplied consideration: the facility permitted temporary use of the property, and Sullivan accepted the posted conditions governing that use.

The Complaint's allegations about font size and placement do not negate formation as a matter of law. It reproduces and transcribes the sign, alleges that it appeared at the garage entrance

[1] The current Terms contain a Florida governing-law clause and state that the substantive law of arbitration is Florida law. Goldman Decl. ¶ 21. The Court must first decide formation under the forum's choice-of-law rules, yielding District law for Sullivan and Maryland law for Vaillant and Albright. Once formation is established, the Florida clause may govern interpretation of the online Terms to the extent it is valid and materially relevant. *See Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995). In any event, no outcome-determinative interpretive conflict exists here because the current Terms unmistakably require bilateral, individual arbitration of the claims asserted.

and again near the Target entrance, and admits that Sullivan personally parked. Compl. ¶¶ 30-38, 69-79. At minimum, Vanguard's historical photographs and records establish a prima facie showing of reasonable notice; a contrary evidentiary showing would trigger a limited Section 4 trial, not denial based on subjective nonreading.

For Vaillant and Albright, Maryland likewise follows an objective theory of contracts. The question is what a reasonable person in the parties' position would have understood from their outward conduct. *Cochran v. Norkunas*, 398 Md. 1, 14-17, 919 A.2d 700, 708-09 (2007). Acceptance may be manifested by acts as well as words, *Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 410-12, 396 A.2d 1090, 1095-96 (1979), and a contract may be implied in fact from conduct and surrounding circumstances, *County Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94 n.7, 747 A.2d 600, 606 n.7 (2000).

The 275 agreement identified private property, stated that entering and parking constituted agreement, and directed a nonconsenting driver to exit and park elsewhere. Goldman Decl. ¶¶ 11-13. Vaillant and Albright each accepted the parking license by entering, parking, and using the facility rather than leaving. The Complaint depicts the agreement at both vehicle entrances and quotes it in full. Compl. ¶¶ 43-53. Maryland's objective rule does not permit a party to accept the benefit of parking while avoiding posted conditions solely by asserting that the sign was not read.

The arbitration promise also satisfies Maryland's separate mutuality requirement. It requires arbitration of "any dispute or controversy" arising under or in connection with the agreement and is framed as a bilateral obligation, not a one-sided promise binding only the parker. Goldman Decl. ¶ 13, Ex. C. The facility agreement contains no unrestricted amendment provision allowing Vanguard to revoke that promise after a dispute arises. It therefore differs fundamentally

from the illusory promises in *Cheek* and *Johnson*. *See Cheek*, 378 Md. at 149-61; *Johnson*, 131 F.4th at 178-82.

Persuasive decisions likewise have enforced automated-parking arbitration agreements accepted by parking. *Brant v. Parking Revenue Recovery Servs., Inc.*, No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 17-21 (D. Colo. Apr. 14, 2026), rejected arguments that the signs were unread, poorly positioned, or ineffective without a gate or click-through. *Crostarosa v. LAZ Parking Ltd.*, No. 1:25-cv-00211-NYW-KAS, 2026 WL 183469, at *4-10 (D. Colo. Jan. 23, 2026), compelled arbitration of a DPPA claim arising from automated parking enforcement. *Tobey v. Ace Parking Mgmt., Inc.*, No. 3:24-cv-02932-X, 2025 WL 1919887, at *3-6 (N.D. Tex. July 11, 2025), likewise held that posted terms and the ability to park supplied assent and consideration. Those decisions are persuasive because they apply the same objective principles recognized by both District and Maryland law.[2]

## III. Plaintiffs' claims fall within the arbitration provisions.

Under District law, courts enforce the text of a broad arbitration clause and resolve doubts about coverage in favor of arbitration. *Parker v. K&L Gates, LLP*, 76 A.3d 859, 868-72 (D.C. 2013); *Masurovsky v. Green*, 687 A.2d 198, 202 (D.C. 1997); *2200 M St. LLC v. Mackell*, 940 A.2d 143, 151 (D.C. 2007). The 1515 clause reaches "any and all disputes, claims or controversies" arising from parking or under the contract and expressly includes claims based on statute, tort, fraud, and misrepresentation. Goldman Decl. ¶ 10.

---

[2] This case is distinguishable from *Hunsinger v. Parking Revenue Recovery Services, Inc.* where arbitration was denied because the plaintiff produced a title transfer and DMV notification showing that he had sold the vehicle months before the parking event. No. 3:25-cv-02227-N-BW, 2025 WL 3960913, at *4-5 (N.D. Tex. Dec. 4, 2025), *report and recommendation adopted*, 2026 WL 78028 (N.D. Tex. Jan. 9, 2026).

Sullivan challenges the same subjects the contract governs: video and license-plate recording, use of vehicle-registration information, parking charges, the mailed notice, the dispute process, and collection activity. Compl. ¶¶ 54-89. Those claims would not exist but for her alleged parking transaction and arise directly from Vanguard's performance of the contract. Their statutory labels do not remove them from the clause.

Maryland and Fourth Circuit decisions give ordinary effect to broad language covering disputes "arising under or in connection with" an agreement. *See Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179-84 (4th Cir. 2013). Vaillant's and Albright's claims concern payment compliance, plate monitoring, owner-information access, notices, disputes, and collection activity addressed by the 275 agreement. Compl. ¶¶ 90-136; Goldman Decl. ¶¶ 11-13. Independently, each assented to the online Terms, which cover any claim arising out of or relating to the Terms, the Parking Agreement, the Services, or any Parking Charge and expressly authorize injunctive, declaratory, statutory, and other individual relief in arbitration. Goldman Decl. ¶¶ 20-21. Every claim they assert against Vanguard therefore falls within at least one arbitration agreement.

## IV. Plaintiffs independently formed online arbitration agreements under the law governing their notice transactions.

For Sullivan's online agreement, District law provides that an online agreement is formed when the interface gives reasonably conspicuous notice of linked terms and identifies an objective action that signifies assent. *Selden v. Airbnb, Inc.*, 4 F.4th 148, 152-57 (D.C. Cir. 2021), enforced a sign-in-wrap agreement where text adjacent to the action button told the user that proceeding constituted agreement. *Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 54-55 (D.D.C. 2022), likewise enforced a checkbox-controlled agreement.

Vanguard's interface tracked Selden. Immediately next to the required search action, it stated: "By searching, you agree to our Privacy Policy and Terms of Service," with both documents

hyperlinked. Goldman Decl. ¶¶ 14-18. Sullivan entered notice-specific information, selected Search, retrieved her notice, and used the resulting workflow to dispute it. Id. ¶¶ 23-26. The sentence used the same action word as the button and linked the terms at the point of decision. Her conduct objectively manifested assent whether or not she opened the links.

For Vaillant's online agreement, Maryland applies the same two-part online formation inquiry: reasonable notice of the offered terms and objective manifestation of assent. The Fourth Circuit's decisions provide particularly useful guidance. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 152-60 (4th Cir. 2025), enforced linked terms where the assent notice appeared on an uncluttered page next to the transaction button.[3]

This interface here is similar to the one in *Dhruva*. The Terms link and assent sentence were immediately adjacent to the Search button; no scrolling or exploration was required; and the sentence expressly said that "searching" constituted agreement. Goldman Decl. ¶¶ 14-18. Vaillant then searched for Notice 49E72, filed two disputes, and used live chat concerning that notice. Id. ¶¶ 27-30. The notice, action, and resulting service were part of one continuous transaction, establishing objective assent under Maryland law.

Albright's Maryland assent was stronger still. She received the same search-page notice and then encountered a separate screen stating, "I have read and agree to the Terms and Conditions and Privacy Policy." The system disabled the "Continue to submit appeal" button until the box was checked. Goldman Decl. ¶¶ 19, 31-34. Her successful April 19, 2026 submission is system-level evidence that she checked the box. That classic clickwrap procedure supplies reasonable

[3] *Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 218-22 (4th Cir. 2024), declined enforcement where the user had to go exploring for the terms and nothing near the Submit button explained that clicking it constituted assent. No such exploration is required here.

notice and an unambiguous manifestation of assent under Maryland law. *See Dhruva*, 131 F.4th at 152-60; *Marshall*, 112 F.4th at 218-22.

The Terms require arbitration of disputes between the user and Vanguard, apply the FAA, authorize the same individual relief available in court, and require individual proceedings. Goldman Decl. ¶¶ 20-21. That bilateral promise supplies the independent mutuality Maryland requires. *See Cheek,* 378 Md. at 153-61; *Bailey v. Thompson Creek Window Co.*, No. 21-2345, 2023 WL 4679460, at *2-3 (4th Cir. July 27, 2023).

## V. Plaintiffs' contract-wide attacks do not defeat the arbitration provisions under either State's law.

Under District law, the fact that an agreement is standardized or offered on a take-it-or-leave-it basis does not by itself make it unenforceable. *Woodroof v. Cunningham*, 147 A.3d 777, 788-90 (D.C. 2016). Unconscionability requires both a meaningful deficiency in choice or formation and terms that are unreasonably one-sided or oppressive. *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449-50 (D.C. Cir. 1965). Sullivan had a stated method of rejection - leave within fifteen minutes - and the arbitration clause was bilateral, identified by a separate heading, and allowed the same individual relief a court could award. Goldman Decl. ¶¶ 7-10.

Under Maryland law, a person with an opportunity to review a contract knows its contents, and adhesion alone does not establish unconscionability. *Walther v. Sovereign Bank*, 386 Md. 412, 426-31, 444-46, 872 A.2d 735, 743-46, 754-55 (2005). The 275 agreement offered a clear choice to exit, bound both sides to arbitrate covered disputes, and identified the arbitration provision under its own heading. Goldman Decl. ¶¶ 11-13.. The online Terms likewise contain reciprocal obligations, authorize the same individual relief available in court, and use a prospective notice-

based amendment process. Those features defeat an argument that Vanguard retained an unfettered power to avoid arbitration.

Plaintiffs allege that the parking contracts are generally illegal, contrary to public policy, or ineffective because other provisions authorize information access or charges. Compl. ¶¶ 35-38, 51-53. Those are contract-wide validity attacks, not formation challenges directed specifically to the arbitration provisions. Under the FAA's separability doctrine, such merits questions are for the arbitrator once the Court determines that an arbitration agreement was formed. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). The Court retains the threshold duty to decide genuine formation issues, including Maryland mutuality. *Johnson*, 131 F.4th at 176-82.

## VI. The arbitrable claims must proceed only on an individual basis.

This issue is governed by federal arbitration law, not a conflicting state formation rule. Sullivan's facility contract and the online Terms expressly waive class proceedings. Goldman Decl. ¶¶ 9-10, 20-21. The FAA requires enforcement of that bilateral choice. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

The 275 facility clause does not affirmatively authorize class arbitration. Consent to bilateral arbitration cannot be converted into class arbitration by silence or ambiguity. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184-89 (2019). Vaillant and Albright therefore may arbitrate only their own claims. The online Terms independently and expressly prohibit class, collective, representative, mass, private-attorney-general, and consolidated proceedings.

## VII. The FAA requires a stay pending arbitration.

Once the Court determines that claims are referrable to arbitration and Vanguard requests a stay, Section 3 requires a stay. *Smith v. Spizzirri*, 601 U.S. 472, 475-78 (2024). All merits, class-

certification, and class-discovery proceedings against Vanguard on the arbitrable claims must therefore be stayed.

The Court also has discretion to stay overlapping claims against the remaining Defendants to avoid inconsistent findings and protect the arbitration. The claims against all Defendants turn on common predicate questions concerning the parking agreements, payment terms, monitoring, owner-information access, and notices. A stay of the overlapping action will preserve the parties' arbitration agreements and conserve judicial resources. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).

## VIII. Alternatively, any genuine formation dispute requires a prompt, limited Section 4 trial.

Vanguard's evidence establishes formation under both States' standards: the contracts and their acceptance language; the Complaint's admission that each Plaintiff personally parked; the notice-specific activity records; the adjacent online assent notice; Albright's checkbox-controlled submission; and the current Terms' unchanged substantive arbitration requirements. Goldman Decl. ¶¶ 4-35. A conclusory statement that a Plaintiff did not read or remember the terms does not create a genuine dispute. *Osvatics*, 535 F. Supp. 3d at 9.

If a Plaintiff produces competent contrary evidence, Section 4 prescribes a prompt trial confined to formation. *Jin*, 966 F.3d at 827-29. The trial should be limited to: (1) the signage in effect at the relevant facility and date; (2) each Plaintiff's entry, parking, and opportunity to reject the facility terms; (3) each Plaintiff's notice-search and dispute activity; (4) the website interface and Terms; and (5) for the Maryland Plaintiffs, the mutuality and prospective amendment provisions of the online Terms. All merits and class proceedings should remain stayed.

## CONCLUSION

The Court should apply District of Columbia law to Sullivan's formation and scope issues, Maryland law to Vaillant's and Albright's, compel all claims against Vanguard to individual arbitration, and stay the action. Alternatively, if a Plaintiff produces competent evidence creating a genuine formation dispute, the Court should set a prompt, limited Section 4 trial and stay all other proceedings.

Respectfully Submitted,

Dated: August 4, 2026

By: /s/ Joseph F. Fiorill

Joseph F. Fiorill (D.C. Bar No. 995900)
Parker Poe Adams & Bernstein LLP
900 7th Street NW, Suite 700
Washington DC 20001
(202) 854-2819 / (202) 217-2771 (facsimile)
joefiorill@parkerpoe.com

Jeremy I. Knight
Washington D.C. Bar No. 90036942
Florida State Bar No. 1009132
Knight Law, P.A.
4624 Hollywood Blvd., Suite 203
Hollywood, Florida 33021
Phone: 786.480.0045
Email: Yirmi@KnightLawFL.com
*Pro Hac Vice Application to be submitted*

Shlomo Y. Hecht
Washington D.C. Bar No. 90013364
Florida State Bar No. 127144
Knight Law, P.A.
4624 Hollywood Blvd., Suite 203
Hollywood, Florida 33021
Phone: 786.480.0045
Email: Sam@KnightLawFL.com
*Pro Hac Vice Application to be submitted*

**LCVR 7(m) CERTIFICATION**

I hereby certify that I sought consent to the relief requested herein from Plaintiffs' counsel on August 4, 2026, and that Plaintiff's counsel affirmatively stated that Plaintiffs will oppose this motion.

/s/ Joseph F. Fiorill
Joseph F. Fiorill

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/ Joseph F. Fiorill
Joseph F. Fiorill