**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRIANNE SULLIVAN, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>VANGUARD PARKING SOLUTIONS, INC., *et al.*<br><br>Defendants. | Case No.: 1:26-cv-02015-TNM<br>Judge Trevor N. McFadden |

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions Inc. ("Vanguard") hereby files its reply in support for its motion to compel Plaintiffs Brianne Sullivan, Charles "Pat" Vaillant, and Ashley Albright to arbitrate their claims against Vanguard on an individual basis and to stay this action pending arbitration. In support, Vanguard states as follows.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................... iii

INTRODUCTION ..................... 1

ARGUMENT ..................... 4

I. PLAINTIFFS' OPPOSITION ITSELF CREATES FACTUAL DISPUTES THAT, UNDER *JIN*, MUST BE RESOLVED BEFORE THE CASE MAY PROCEED TO THE MERITS. ..................... 4

A. The parties present competing evidence concerning objective notice of the facility agreements. ..................... 5

B. Plaintiffs likewise create factual disputes about the historical online interfaces. ..................... 6

C. Plaintiffs' reliance on *Santiago-Duran* cannot override *Jin*. ..................... 7

II. THE FACILITY AGREEMENTS PROVIDE THE PRIMARY BASIS FOR ARBITRATION. ..................... 7

A. Sullivan's D.C. Parking Contract either formed by objective conduct or presents a factual notice question for § 4. ..................... 7

1. Parking Management does not establish that actual reading is required. ..................... 8

2. Plaintiffs' reliance on D.C. parking-sign regulations does not convert the formation issue into a legal nullity. ..................... 9

3. Plaintiffs' attack on the separate DPPA-waiver provision is for the arbitrator, not a basis to nullify the arbitration clause. ..................... 10

B. The Annapolis agreement contains a mutually binding arbitration promise under Maryland law. ..................... 11

1. Plaintiffs themselves supplied the missing evidence concerning the actual 275 sign. 11

2. The arbitration provision supplies the independent mutual promise required by *Cheek*. ..................... 11

3. Whether the 275 signs furnished adequate objective notice is factual. ..................... 13

4. The injunctive-relief carveout narrows the 275 arbitration clause; it does not nullify it. 14

III. PLAINTIFFS' WEBSITE ACTIVITY PROVIDES AN ADDITIONAL BASIS FOR ARBITRATION AND, AT MINIMUM, INDEPENDENT § 4 ISSUES. ..................... 14

A. Plaintiffs' later screenshots do not defeat Goldman's historical-interface testimony as a matter of law. ..................... 15

B. Albright's affirmative checkbox is materially stronger than the passive interfaces in Plaintiffs' cases. ..... 16

C. Plaintiffs' scope argument overlooks the historical Terms' separate ratification language. ..... 17

D. Plaintiffs' Maryland change-in-terms argument does not invalidate the fixed 275 arbitration agreement. ..... 18

E. Plaintiffs' assertion that using the dispute website was involuntary does not negate objective assent as a matter of law. ..... 19

IV. PLAINTIFFS' CLAIMS FALL WITHIN THE FACILITY CLAUSES TO THE EXTENT THOSE CLAUSES ARE FORMED. ..... 20

V. ANY ARBITRATION COMPELLED UNDER THE FACILITY AGREEMENTS MUST PROCEED INDIVIDUALLY. ..... 20

VI. THE COURT SHOULD STAY PROCEEDINGS AGAINST VANGUARD AND SHOULD STAY OVERLAPPING PROCEEDINGS AGAINST THE REMAINING DEFENDANTS AT LEAST THROUGH RESOLUTION OF ARBITRABILITY. ..... 21

VII. THE COURT SHOULD COMPEL ARBITRATION ON THE PRESENT RECORD OR HOLD THE MOTION IN ABEYANCE AND PROMPTLY TRY THE DISPUTED FORMATION ISSUES. ..... 23

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 2, 10

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*,
378 Md. 139, 835 A.2d 656 (2003) .......... 11, 12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 14

**Jin v. Parsons Corp.*,
966 F.3d 821 (D.C. Cir. 2020) .......... *passim*

*Johnson v. Continental Finance Co.*,
131 F.4th 169 (4th Cir. 2025) .......... 18, 19

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .......... 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 21

*Noohi v. Toll Bros., Inc.*,
708 F.3d 599 (4th Cir. 2013) .......... 2, 12

*Osborne v. Howard Univ. Physicians, Inc.*,
904 A.2d 335 (D.C. 2006) .......... 19

*Parking Management Inc. v. Jacobson*,
257 A.2d 479 (D.C. 1969) .......... 8

*Santiago-Duran v. Vanguard Parking Solutions, Inc.* .......... 7

**Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021) .......... 15

*Slaughter v. National Railroad Passenger Corp.*,
460 F. Supp. 3d 1 (D.D.C. 2020) .......... 17

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .......... 21

*Toledano v. O'Connor*,
501 F. Supp. 2d 127 (D.D.C. 2007) .......... 22

*Trilogy Federal, LLC v. CivitasDX LLC*,
No. 24-cv-2713 (BAH), 2025 WL 1293347 (D.D.C. May 5, 2025) .......... 21, 22

**Walther v. Sovereign Bank*,
386 Md. 412, 872 A.2d 735 (2005) .......... 2, 12, 13

**Statutes**

Annapolis Code §12.28.010 .......... 13

Federal Arbitration Act § 4 .......... *passim*

## INTRODUCTION

Plaintiffs' Opposition does not establish that arbitration should be denied. If anything, Plaintiffs' own evidence confirms why arbitration should either be compelled on the present record or, at minimum, promptly resolved through the limited procedure Congress prescribed in § 4 of the Federal Arbitration Act. Four points are dispositive.

***First*, Plaintiffs' own evidence confirms the existence and placement of the very facility agreements they claim they never saw.** Vanguard submitted sworn evidence that written parking agreements were displayed at the two facilities when Plaintiffs parked. Goldman Decl. ¶¶5–13. Plaintiffs respond with affidavits stating that they personally did not see the agreements. Vaillant Aff. ¶5; Sullivan Aff. ¶5; Albright Aff. ¶5. But Plaintiffs simultaneously submit their own investigators' sworn testimony and photographs confirming that the agreements existed and identifying where they were displayed. At 1515 New York Avenue, Plaintiffs' investigator found **three** placards prominently headed "PARKING CONTRACT – PRIVATE PROPERTY," including at the entrance and exit. Hickman Aff. ¶¶4–8. At 275 West Street, Plaintiffs' investigator visited only eleven days after Vaillant parked and found a placard titled "PARKING AGREEMENT" outside **each of the garage's two entrances.** Smith Aff. ¶¶3–7. Plaintiffs characterize those signs as insufficiently conspicuous. Vanguard disagrees. But that disagreement concerns the real-world visibility, placement, and adequacy of notice—a paradigmatic factual formation dispute.

Under controlling D.C. Circuit law, that dispute cannot support Plaintiffs' requested result. When "genuine disputes of material fact" exist concerning assent, § 4 requires the Court to "proceed summarily to trial" on arbitrability before allowing merits litigation to proceed. *Jin v. Parsons Corp.*, 966 F.3d 821, 827–29 (D.C. Cir. 2020). The district court in *Jin* erred precisely

because it identified factual disputes over assent, denied arbitration, and permitted merits litigation to begin instead of first resolving arbitrability. *Id.* Plaintiffs' nonbinding Florida authority cannot displace that controlling rule.

***Second*, Plaintiffs' legal attacks on the facility agreements do not establish that their arbitration clauses are unenforceable.** Sullivan's 1515 agreement expressly encompasses statutory claims arising from parking. Plaintiffs nevertheless argue that a separate provision concerning DPPA claims makes the entire Parking Contract illegal and, because the contract contains no textual severability clause, supposedly brings the arbitration clause down with it. That argument cannot be reconciled with *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract whether or not the parties inserted their own severability clause. A challenge alleging that another provision renders the contract as a whole illegal is for the arbitrator once formation is established.

The Maryland Plaintiffs' mutuality argument likewise fails. The 275 agreement provides that **"ANY DISPUTE OR CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT … SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION."** That neutral, passive language binds both sides. *Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (4th Cir. 2013), on which Plaintiffs rely, involved materially different language imposing obligations exclusively on the buyer. Maryland's highest court has expressly held that mutuality does not require identical remedies and that specified exceptions from arbitration do not destroy mutuality where both parties remain obligated to arbitrate covered disputes. *Walther v. Sovereign Bank*, 386 Md. 412, 433–35, 872 A.2d 735, 747–48 (2005).

***Third*, Plaintiffs' online activity supplies an additional basis for arbitration—or, at the very least, additional factual issues requiring § 4 resolution.** Goldman testified that, during the relevant periods, the notice-search interface displayed immediately adjacent to the search action: "By searching, you agree to our Privacy Policy and Terms of Service," with the Terms hyperlinked. Goldman Decl. ¶¶14–18 & Ex. D. Sullivan and Vaillant indisputably searched for their notices and then used the resulting notice-specific dispute functions. Id. ¶¶23–31. Albright's evidence is stronger still: her April 19 dispute could not be submitted unless the user affirmatively checked "I have read and agree to the Terms and Conditions and Privacy Policy." Id. ¶¶19, 32–34 & Ex. E.

Plaintiffs attempt to contradict Goldman with screenshots taken in May 2026—after Sullivan's and Vaillant's late-2025 activity and after Albright's April 19 submission. That does not establish, as a matter of law, what the interface looked like months earlier. It creates a factual dispute. The online Terms also expressly state that acceptance "reaffirm[s] and ratif[ies]" the Parking Agreement posted at Vanguard's facilities and specifically incorporates its binding arbitration clause. Ex. F, ECF No. 11-1 at 18, 23. Thus, even if the Court concludes that the online Terms' separate arbitration provision is narrower than Vanguard initially argued, the Terms' express ratification of the facility agreement remains independently relevant.

***Fourth*, Vanguard does not ask the Court to resolve these issues on an inaccurate record.** Vanguard corrects below several record descriptions in its opening papers and narrows the online theory accordingly. Those corrections do not require new evidence, and they do not eliminate Vanguard's facility-contract showing. Indeed, Plaintiffs' own evidence independently establishes the actual Annapolis signage that was mistakenly identified in Vanguard's original exhibit. The corrections therefore sharpen the issues rather than change them.

The Court should compel Plaintiffs' arbitrable claims against Vanguard to individual arbitration. If the Court concludes that Plaintiffs have created a genuine dispute concerning objective notice, electronic assent, or any other material formation fact, it should hold Vanguard's Motion in abeyance, order only such limited formation discovery as is necessary, promptly conduct the § 4 proceeding required by *Jin*, and stay merits and class proceedings in the interim.

## ARGUMENT

### I. PLAINTIFFS' OPPOSITION ITSELF CREATES FACTUAL DISPUTES THAT, UNDER *JIN*, MUST BE RESOLVED BEFORE THE CASE MAY PROCEED TO THE MERITS.

Plaintiffs devote only a page to § 4 and contend that no trial is necessary because Vanguard's evidence supposedly is "legally insufficient, even if fully credited." Opp. at 39. That premise is incorrect both factually and legally.

The FAA provides that when "the making of the arbitration agreement" is "in issue," the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The D.C. Circuit applied that language directly in *Jin*. After the district court found genuine factual disputes concerning whether an employee assented to arbitration, it denied the employer's motion and allowed the litigation to proceed. 966 F.3d at 824–27. The D.C. Circuit vacated. It held that § 4 required the district court first to resolve arbitrability and instructed the court to hold the motion to compel "in abeyance pending its prompt resolution of whether the parties agreed to arbitrate." *Id.* at 829.

That is precisely the alternative Vanguard requested in its opening Motion. And unlike Plaintiffs' characterization, this record contains concrete factual disputes rather than merely competing legal interpretations.

### A. The parties present competing evidence concerning objective notice of the facility agreements.

Goldman testified that the facilities displayed written parking agreements describing the conditions under which drivers could park. Goldman Decl. ¶¶5–13. As to 1515, the declaration identifies the heading, the direction to nonconsenting drivers to exit, and the arbitration disclosure. Id. ¶¶7–10 & Exs. A–B.

Sullivan responds that she personally "did not even see, let alone read" a Parking Contract. Sullivan Aff. ¶5. Yet Plaintiffs' own investigator establishes that the Parking Contract physically existed. Mary Hickman visited 1515 on January 5, 2026 and swore that the garage contained three placards titled "PARKING CONTRACT – PRIVATE PROPERTY": one at the entrance, one at the exit, and one near the Target escalator doors. Hickman Aff. ¶¶4–8.

Thus, the parties are not litigating whether a contract document existed. They dispute whether its physical presentation provided objectively adequate notice to a reasonable driver and whether Sullivan's conduct objectively manifested assent.

The Annapolis record is at least as clear. Vaillant says he did not see the Parking Agreement on November 8. Vaillant Aff. ¶5. But Plaintiffs' investigator visited the same facility on **November 19—eleven days later**—and swore that the garage had two entrances and that outside **each** was a placard titled "PARKING AGREEMENT." Smith Aff. ¶¶3–4. Albright similarly says she did not personally see those signs when she parked several months later. Albright Aff. ¶5. Goldman states that written agreements were displayed at the relevant times. Goldman Decl. ¶6.

Plaintiffs may persuade the factfinder that the signs were insufficiently conspicuous. Vanguard may persuade the factfinder otherwise. But that is exactly why § 4 exists. Plaintiffs cannot simultaneously introduce extensive photographic and testimonial evidence about sign

location, distance, visibility, surrounding signage, traffic flow, and accessibility and then characterize objective notice as a purely legal question requiring no factfinding.

### B. Plaintiffs likewise create factual disputes about the historical online interfaces.

Goldman testified that during the dates relevant to Plaintiffs' notice searches, the notice-search page displayed immediately adjacent to the search action: "By searching, you agree to our Privacy Policy and Terms of Service." Goldman Decl. ¶¶14–18 & Ex. D.

Plaintiffs respond with screenshots taken on May 12 and May 14, 2026 and argue that those later images contradict Goldman. Opp. at 34–35.

But Sullivan used the website in November 2025. Vaillant used it in November and December 2025. Albright successfully submitted her dispute on April 19, 2026. Goldman Decl. ¶¶23–35. A screenshot taken weeks or months later does not conclusively establish what those Plaintiffs encountered on their respective dates.

If Plaintiffs' later screenshots conflict with Goldman's testimony concerning the historical interface, the result is a **factual dispute about the historical interface**. It is not a basis for deciding, without a § 4 proceeding, that Vanguard's testimony must be disregarded.

The point is even stronger as to Albright. Goldman specifically testified that by April 2026 the dispute workflow required the user to check: "I have read and agree to the Terms and Conditions and Privacy Policy." Goldman Decl. ¶19 & Ex. E.

He further testified that the "Continue to submit appeal" function was unavailable until that box was selected and that Albright's successful April 19 submission therefore reflected completion of the assent step. Id. ¶¶33–34.

Albright does not deny submitting the April 19 dispute. Albright Aff. ¶14. She does not testify that she bypassed the checkbox or that the system permitted submission without selecting

it. Plaintiffs instead argue about what a reasonable user would understand the screen to mean. Opp. at 35 n.11.

That is not an absence of evidence. It is a dispute concerning the objective meaning and effect of a specific electronic assent process.

### C. Plaintiffs' reliance on *Santiago-Duran* cannot override *Jin*.

Plaintiffs rely on *Santiago-Duran v. Vanguard Parking Solutions, Inc.*, a Southern District of Florida decision, for the proposition that no § 4 trial is necessary when the movant's proof would be legally insufficient even if credited. Opp. at 39.

Whatever the facts presented there, this Court is bound by *Jin*.

More importantly, Vanguard's showing here is not legally insufficient if credited. Crediting Vanguard's evidence means accepting, among other things, that written facility agreements were displayed, that they told drivers parking constituted agreement and directed nonconsenting drivers to exit, that Sullivan, Vaillant, and Albright personally parked at the respective facilities, that Vanguard displayed an assent sentence adjacent to the notice-search action during the relevant periods, and that Albright could not submit her April dispute without checking an express agreement box.

Plaintiffs contest material aspects of those facts and their objective significance. Under *Jin*, those issues must be resolved before merits litigation begins.

## II. THE FACILITY AGREEMENTS PROVIDE THE PRIMARY BASIS FOR ARBITRATION.

### A. Sullivan's D.C. Parking Contract either formed by objective conduct or presents a factual notice question for § 4.

The 1515 Parking Contract did not merely contain hidden legal terms somewhere inside an unrelated document. The sign identified itself at the top as: **"PARKING CONTRACT –**

**PRIVATE PROPERTY”** and immediately warned: **“IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW.”** Goldman Decl. ¶7 & Exs. A–B.

It stated that “[b]y parking here, you agree to the terms of this Contract” and afforded a driver fifteen minutes to leave if she did not wish to accept. Id. ¶8. The face of the sign separately disclosed that unresolved disputes were subject to binding arbitration and that jury and class proceedings were waived. Id. ¶9. The operative arbitration clause then applies to:

> “ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES BETWEEN YOU AND VANGUARD ARISING FROM YOUR PARKING AT THE FACILITY OR UNDER THIS CONTRACT, INCLUDING ANY DISPUTES OR CLAIMS BASED ON CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY.”

Id. ¶10 & Ex. B.

Sullivan indisputably entered the facility and remained parked there. Her subjective statement that she personally did not notice the sign does not itself resolve whether Vanguard objectively provided reasonable notice of the terms.

**1. Parking Management does not establish that actual reading is required.**

Plaintiffs rely heavily on *Parking Management Inc. v. Jacobson*, 257 A.2d 479 (D.C. 1969). Opp. at 19.

There, the parking operator sought to enforce a liability limitation where the customer testified that he was unaware of the limitation, and the court emphasized the absence of proof that the customer had “expressly or impliedly agreed” to it. *Id.* at 480. That is not a rule that posted terms can bind only if the customer later admits actually reading them.

Here Vanguard has offered the kind of evidence whose absence mattered in *Jacobson*: a contract sign specifically identifying itself as a contract, stating the conduct constituting

acceptance, instructing a nonconsenting driver to exit, and separately flagging arbitration. Goldman Decl. ¶¶7–10 & Exs. A–B.

And Plaintiffs' own investigator confirms three such contract placards at the garage shortly after Sullivan parked. Hickman Aff. ¶¶4–8.

The parties disagree about whether their presentation was sufficiently conspicuous in context. That distinguishes this case from one involving no evidence of communicated terms and, at minimum, creates a factual issue concerning objective notice.

The same is true of *Estate of Fulton* and *Walker*. Neither establishes an actual-reading requirement. They address whether terms were adequately communicated so that assent objectively could be inferred. That inquiry is precisely why the competing evidence concerning the signs matters.

**2. Plaintiffs' reliance on D.C. parking-sign regulations does not convert the formation issue into a legal nullity.**

Plaintiffs cite 24 DCMR §§609.1 and 609.2 as a "benchmark" for conspicuous parking signage. Opp. at 20 n.8. But those regulations govern specified licensing/rate information for parking facilities; they do not establish a special rule that every term of a private parking contract—or every arbitration provision—must satisfy the specifications Plaintiffs attempt to import into ordinary contract formation.

The relevant contract question remains whether the particular presentation reasonably communicated that parking was conditioned on stated terms. Plaintiffs' own extensive photographic evidence concerning location, sight lines, competing signs, traffic, and readability demonstrates why that inquiry is factual.

### 3. Plaintiffs' attack on the separate DPPA-waiver provision is for the arbitrator, not a basis to nullify the arbitration clause.

Plaintiffs alternatively argue that the entire 1515 Parking Contract is void because another provision allegedly prospectively waives DPPA rights. Opp. at 21–22. They then contend that because the contract contains no express severability clause, the arbitration provision necessarily falls as well.

That is directly contrary to the FAA's separability doctrine.

In *Buckeye Check Cashing, Inc. v. Cardegna*, the Supreme Court held that, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." 546 U.S. 440, 445 (2006). Unless the challenge is directed specifically to the arbitration provision itself, a challenge to the contract's validity—including an argument that illegality elsewhere renders the entire contract void—is decided by the arbitrator in the first instance. *Id.* at 445–46.

*Buckeye* specifically rejected reliance on state-law rules under which an illegal agreement had no "severable, or salvageable, parts." *Id.* at 446.

Thus Plaintiffs' emphasis on the absence of a contractual severability clause is misplaced. FAA separability is not dependent upon the parties inserting one.

Plaintiffs' prospective-waiver theory attacks a separate provision concerning acquisition and use of personal information. It does not contend that the **arbitration clause itself** prohibits the arbitrator from adjudicating DPPA claims or awarding statutory remedies. To the contrary, the arbitration provision expressly encompasses claims based on "STATUTE."

Once the Court determines formation of the arbitration agreement, Plaintiffs' argument that a different provision is unlawful or renders the overall Parking Contract invalid is a question for the arbitrator under *Buckeye*.

### B. The Annapolis agreement contains a mutually binding arbitration promise under Maryland law.

Plaintiffs advance two principal arguments concerning the 275 agreement: Vanguard supposedly failed to authenticate the real sign, and the arbitration provision supposedly lacks the independent mutuality Maryland requires. Neither supports denial.

#### 1. Plaintiffs themselves supplied the missing evidence concerning the actual 275 sign.

Vanguard acknowledges the Exhibit C error described above and does not rely on that image.

But the correction does not establish that the Annapolis agreement did not exist. Plaintiffs themselves supplied sworn evidence of it. Their paralegal Julie Pfanstiel Smith visited 275 West Street on November 19, 2025—only eleven days after Vaillant parked—and personally photographed the facility. Smith Aff. ¶3. She swore that there were two entrances and that outside each entrance was a placard titled "PARKING AGREEMENT." Id. ¶4. Plaintiffs reproduce those photographs in their Opposition. Opp. Images 10–13.

Plaintiffs' Complaint likewise quotes the Parking Agreement and its arbitration provision. Compl. ¶¶44, 51. And the Opposition itself quotes the same provision and relies upon it in arguing scope and mutuality. Opp. at 17–18.

The mistaken Exhibit C therefore is a reason to correct the record—not to pretend that the actual Annapolis agreement has vanished from the case.

#### 2. The arbitration provision supplies the independent mutual promise required by *Cheek.*

Plaintiffs correctly observe that under Maryland law the arbitration clause itself must be supported by consideration. *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 153–61, 835 A.2d 656, 665–69 (2003).

But *Cheek* does not require consideration extraneous to the arbitration promises themselves. Mutual promises to arbitrate provide the requisite consideration. *Id.* at 153–54.

The 275 provision states:

> "ANY DISPUTE OR CONTROVERSY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT, OTHER THAN A CLAIM FOR INJUNCTIVE RELIEF, SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION."

Compl. ¶51.

That language does not say "the driver agrees to arbitrate claims against Vanguard." It does not reserve Vanguard's covered claims for court. It says **any dispute or controversy** within the clause's scope **shall be settled exclusively by arbitration.** That is a bilateral promise.

Plaintiffs' reliance on *Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (4th Cir. 2013), underscores the distinction. The clause there repeatedly imposed obligations expressly on the "Buyer": buyer agreed, buyer waived, and buyer was required to undertake pre-arbitration procedures. The Fourth Circuit emphasized that nowhere did the provision say "Buyer and Seller agree" or use the neutral passive formulation **"it is agreed."** *Id.* at 610–11.

The 275 clause uses precisely the sort of neutral formulation missing from *Noohi*: covered disputes **"SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION."**

Plaintiffs' argument that substantive provisions elsewhere in the Parking Agreement are primarily directed to drivers misses *Cheek*'s inquiry. The question is whether the arbitration promise itself mutually binds the parties. It does.

Nor does the exclusion of a "claim for injunctive relief" destroy mutuality. In *Walther v. Sovereign Bank*, the Maryland Court of Appeals rejected the contention that an arbitration agreement lacks mutuality merely because certain remedies are excluded from arbitration. 386 Md.

412, 433–35, 872 A.2d 735, 747–48 (2005). Mutuality "does not require an exactly even exchange of identical rights and obligations." *Id.* at 433.

Here the injunctive exception is expressed by **type of claim**, not by identity of the claimant. It applies equally whichever party seeks the excluded form of relief.

**3. Whether the 275 signs furnished adequate objective notice is factual.**

Vaillant and Albright each swear that they did not personally see the Parking Agreement. Vaillant Aff. ¶5; Albright Aff. ¶5.

Plaintiffs' investigator, however, swears that the Parking Agreement was posted at both entrances and supplies photographs of those placements. Smith Aff. ¶¶3–7.

Plaintiffs contend that the signs were too small, located on the passenger side, partially obstructed, surrounded by competing signage, and impossible to read without leaving the vehicle. Id. Vanguard disputes whether those circumstances negate reasonable notice, particularly where the agreement identifies itself and expressly conditions entry and parking upon acceptance. Again, those are facts.

Plaintiffs' reliance on Annapolis Code §12.28.010 does not change the result. Section 12.28.010 defines a "sign" for purposes of that municipal parking-place chapter as a durable and legible sign with lettering at least one inch high erected conspicuously. But §12.28.050 specifies the information the required entrance sign must contain—parking rates and operator information. Plaintiffs identify no provision declaring that every separate contractual term must use one-inch lettering or that failure to meet the municipal definition automatically prevents formation of a private agreement.

At most, the ordinance supplies one item of evidence relevant to Plaintiffs' conspicuousness argument. It does not replace Maryland contract law or eliminate the factual inquiry.

#### 4. The injunctive-relief carveout narrows the 275 arbitration clause; it does not nullify it.

Plaintiffs correctly note that the 275 clause excludes "a claim for injunctive relief." Opp. at 17 n.5. Vanguard therefore does not contend that the facility clause compels arbitration of a claim falling squarely within that express exception.

But that does not mean, as Plaintiffs suggest, that Vaillant's and Albright's entire cases become nonarbitrable merely because the Complaint also requests injunctive relief.

The clause commands arbitration of **any dispute or controversy** arising under or in connection with the agreement, subject to the discrete exception for "a claim for injunctive relief." Their damages, statutory, and other noninjunctive claims remain within that broad language.

The FAA requires enforcement of arbitration agreements according to their terms even when the consequence is piecemeal adjudication. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985).

Accordingly, at minimum the noninjunctive claims within the 275 clause should be compelled to arbitration. Any truly excluded injunctive claim may be addressed separately and, as discussed below, stayed while the arbitrable dispute proceeds.

## III. PLAINTIFFS' WEBSITE ACTIVITY PROVIDES AN ADDITIONAL BASIS FOR ARBITRATION AND, AT MINIMUM, INDEPENDENT § 4 ISSUES.

Vanguard narrows its online argument in light of the record correction identified above. Vanguard need not establish that every Plaintiff was bound by the broader online arbitration

wording quoted in the opening memorandum. The facility agreements independently require arbitration of covered claims.

The online evidence nevertheless remains important for three reasons: Plaintiffs objectively used an interface Vanguard says expressly connected searching with agreement to linked Terms; Albright subsequently completed a checkbox-controlled dispute; and the historical Terms in Exhibit F expressly **ratify and incorporate the Parking Agreement and its arbitration provision.**

### A. Plaintiffs' later screenshots do not defeat Goldman's historical-interface testimony as a matter of law.

Goldman states that during the relevant periods:

> "Immediately next to the search action, the page stated: 'By searching, you agree to our Privacy Policy and Terms of Service.'"

Goldman Decl. ¶15.

He further testifies that the "placement and language shown in Exhibit D were part of the website workflow used during the dates relevant to Plaintiffs' searches." Id. ¶16.

Plaintiffs offer screenshots from May 12 and May 14, 2026 and contend that the interface appearing then was different. Opp. at 34–35.

For Sullivan and Vaillant, those screenshots postdate the relevant activity by approximately six months. For Albright, they postdate her successful April 19 submission.

They therefore cannot conclusively establish what appeared on the relevant earlier dates. If their later captures conflict with Goldman's sworn historical-interface testimony, the conflict is evidentiary and should be resolved in the § 4 proceeding.

That conclusion follows directly from *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021), on which Plaintiffs themselves rely. *Selden* describes online notice as a "fact-intensive

inquiry" examining the particular layout and language presented to the user. The appropriate response to competing evidence about what layout existed is factfinding—not a presumption that the postdated screenshot conclusively controls.

### B. Albright's affirmative checkbox is materially stronger than the passive interfaces in Plaintiffs' cases.

Albright's April 19 transaction presents still stronger evidence.

Goldman testified that the dispute workflow by then separately displayed: "I have read and agree to the Terms and Conditions and Privacy Policy." Goldman Decl. ¶19 & Ex. E.

The "Continue to submit appeal" function was unavailable unless the box was checked. *Id.* And because Albright successfully submitted Fair Recovery Adjudication conversation 23994, Goldman testified that the assent box necessarily had been selected. Id. ¶¶33–34.

Albright admits that she successfully submitted that online dispute on April 19. Albright Aff. ¶14.

Plaintiffs do not offer evidence that she did so without checking the box. Instead, they argue that because text elsewhere on the page addressed acceptable use of the website, a reasonable user supposedly would understand "Terms and Conditions" as referring only to those behavioral restrictions. Opp. at 35 n.11.

The screen does not say "I agree only to the acceptable-use rules above." It says "I have read and agree to the **Terms and Conditions** and Privacy Policy."

That affirmative assent mechanism differs materially from the interfaces at issue in cases such as *Sgouros v. TransUnion Corp.*, where the surrounding language affirmatively suggested that clicking served a materially different and limited purpose.

At minimum, the parties' competing interpretations of the actual interface reinforce the need for the § 4 inquiry.

### C. Plaintiffs' scope argument overlooks the historical Terms' separate ratification language.

Plaintiffs correctly point out that the arbitration clause in the July 1, 2024 historical Terms contained in Exhibit F addresses disputes "REGARDING THESE TERMS OR THE SERVICES." ECF No. 11-1 at 27.

Vanguard therefore does not rely here on a construction that silently expands those words.

But Plaintiffs stop their analysis there. On the first page, the same Terms expressly state:

> "YOU FURTHER ACKNOWLEDGE THAT BY AGREEING TO THESE TERMS THAT YOU REAFFIRM AND RATIFY YOUR AGREEMENT TO THE PARKING AGREEMENT POSTED AT VANGUARD PARKING'S PARKING FACILITIES … WHICH IS FULLY AND SPECIFICALLY INCORPORATED HEREIN, INCLUDING, BUT NOT LIMITED TO, THE BINDING ARBITRATION CLAUSE."

ECF No. 11-1 at 18. The Terms repeat:

> "The Parking Agreement is a collateral document to these Terms and is specifically incorporated herein. Accepting these Terms further ratifies your agreement(s) to be bound by the Parking Agreement consistent with your use of one or more of Vanguard Parking's Parking Facilities. Acceptance of these Terms only ratifies your prior agreement regarding the Parking Agreement and does not replace or amend its terms."

*Id.* at 23. That language distinguishes *Slaughter v. National Railroad Passenger Corp.*, 460 F. Supp. 3d 1 (D.D.C. 2020).

*Slaughter* rejected an effort to take an arbitration provision from one separate agreement concerning terms of carriage and make it govern another independent agreement concerning use of a website. The court refused to treat the first contract as a "roving arbitration clause" filling gaps in unrelated instruments.

Here Vanguard's documents expressly do what the agreements in *Slaughter* did not: they identify the collateral Parking Agreement, **specifically incorporate it**, expressly identify its **binding arbitration clause**, and state that online acceptance **ratifies** the prior Parking Agreement.

Vanguard is therefore not "plucking" an arbitration clause from an unrelated instrument. Nor are the differing procedural terms irreconcilable. The historical online Terms expressly state that they form a separate agreement and **"do[] not replace or amend"** the preexisting Parking Agreement. ECF No. 11-1 at 18, 23. Thus the facility agreement continues to govern the parking transaction according to its own arbitration terms, while the separate online agreement governs disputes within its own scope.

To the extent Plaintiffs contend that the referenced "Parking Agreement" cannot be identified or that they lacked a reasonable means to ascertain the incorporated document on the date of online assent, those contentions again raise issues concerning incorporation and assent appropriate for the limited formation proceeding. They do not eliminate the independently asserted facility agreement.

### D. Plaintiffs' Maryland change-in-terms argument does not invalidate the fixed 275 arbitration agreement.

Plaintiffs invoke *Johnson v. Continental Finance Co.*, 131 F.4th 169 (4th Cir. 2025), and contend that the historical online Terms are illusory because Vanguard reserved authority prospectively to change the Terms. Opp. at 38–39.

The Court need not decide whether that provision affects the enforceability of the **online agreement** to resolve the principal Maryland theory.

The 275 facility arbitration clause is a separate, fixed arbitration agreement. Plaintiffs identify no comparable provision in that facility clause granting Vanguard an unfettered right unilaterally to revoke its promise to arbitrate already-arising covered disputes.

The online Terms themselves emphasize the distinction: online acceptance "only ratifies" the prior Parking Agreement and "does not replace or amend its terms." ECF No. 11-1 at 23.

Thus *Johnson* does not convert a potential challenge to one aspect of the separate online Terms into invalidation of the 275 facility's bilateral arbitration promise.

### E. Plaintiffs' assertion that using the dispute website was involuntary does not negate objective assent as a matter of law.

Plaintiffs repeatedly characterize their website use as "forced" because they wanted to contest Vanguard's notices. Opp. at 26, 33–38. That rhetoric is not a substitute for the legal elements necessary to avoid a contract based on coercion or duress.

Under District law, contractual duress requires an improper threat and the absence of a reasonable alternative. *Osborne v. Howard Univ. Physicians, Inc.*, 904 A.2d 335, 339–40 (D.C. 2006). The existence of a legal remedy can constitute a reasonable alternative. *Id.* Maryland applies materially similar principles.

Plaintiffs do not establish those elements merely by saying they preferred to dispute the notices online. Indeed, Albright's own affidavit illustrates that alternatives existed: before completing the online dispute, she mailed Vanguard a written dispute on March 5. Albright Aff. ¶13.

More fundamentally, a person can objectively assent to terms while using a service for the purpose of disputing an underlying obligation. Contract formation does not depend upon whether the user likes the counterparty, concedes the underlying debt, or subjectively wishes to enter a broader commercial relationship.

If Plaintiffs contend that particular threats or circumstances legally deprived them of a meaningful alternative, those circumstances are themselves factual. They cannot simultaneously characterize online assent as a "fact-intensive inquiry" and demand that the Court resolve their coercion theory without a factual proceeding.

## IV. PLAINTIFFS' CLAIMS FALL WITHIN THE FACILITY CLAUSES TO THE EXTENT THOSE CLAUSES ARE FORMED.

There is little genuine scope dispute concerning Sullivan's 1515 clause.

It expressly applies to "ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES" arising from parking at the facility or under the contract and specifically includes claims based on "CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY." Goldman Decl. ¶10 & Ex. B.

Sullivan's DPPA, consumer-protection, and related claims arise from Vanguard's monitoring of her parking session, acquisition and use of information associated with her vehicle, issuance of the resulting notice, and enforcement conduct. Those claims arise from her parking at the facility regardless of the statutory labels attached to them.

The 275 clause likewise encompasses "[a]ny dispute or controversy arising under or in connection with" the Parking Agreement. Vaillant's and Albright's claims concern the same parking transactions, monitoring, payment compliance, vehicle information, notices, and enforcement processes addressed by that agreement.

As acknowledged above, the 275 clause expressly excepts "a claim for injunctive relief." Vanguard therefore seeks enforcement according to that language rather than expansion beyond it. Covered noninjunctive claims should be arbitrated; a truly excluded injunctive claim may remain before the Court subject to an appropriate stay.

## V. ANY ARBITRATION COMPELLED UNDER THE FACILITY AGREEMENTS MUST PROCEED INDIVIDUALLY.

Sullivan's 1515 Parking Contract expressly waives class proceedings. Goldman Decl. ¶¶9–10 & Ex. B. That bilateral arbitration agreement must be enforced according to its terms.

The 275 agreement does not affirmatively authorize class arbitration.

That is dispositive under federal arbitration law. Class arbitration fundamentally changes the nature of the proceeding and cannot be inferred from contractual silence or ambiguity. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–89 (2019).

Accordingly, any Vaillant or Albright claims found arbitrable under the 275 agreement must proceed bilaterally rather than on behalf of a putative class.

The historical online Terms likewise expressly require claims within their arbitration provision to proceed in an individual capacity and prohibit the arbitrator from consolidating multiple persons' claims absent agreement. ECF No. 11-1 at 28.

## VI. THE COURT SHOULD STAY PROCEEDINGS AGAINST VANGUARD AND SHOULD STAY OVERLAPPING PROCEEDINGS AGAINST THE REMAINING DEFENDANTS AT LEAST THROUGH RESOLUTION OF ARBITRABILITY.

Plaintiffs acknowledge that once claims against Vanguard are compelled to arbitration, § 3 requires a stay of those claims at Vanguard's request. See *Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024).

They dispute only whether overlapping litigation against Joyce and the property-owner Defendants also should be stayed.

The FAA does not mandate a stay as to nonsignatories, but this Court has discretion to enter one where necessary to manage overlapping proceedings, avoid inconsistent adjudications, and protect the arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).

Plaintiffs rely principally on *Trilogy Federal, LLC v. CivitasDX LLC*, No. 24-cv-2713 (BAH), 2025 WL 1293347 (D.D.C. May 5, 2025). But *Trilogy* confirms that the inquiry turns on

whether the other proceeding is likely materially to narrow the issues and whether the expected efficiency warrants the resulting delay.

The relationship among the claims here is substantially closer than Plaintiffs suggest. Plaintiffs allege an integrated course of conduct in which Vanguard operates the parking-enforcement system at the facilities, cameras record the vehicles, Vanguard obtains owner information, Vanguard issues the notices, and the other Defendants allegedly participate in or benefit from that same system. Their theories against the remaining Defendants repeatedly depend upon the legality and consequences of the same parking transactions, notices, information acquisition, and enforcement practices at issue in the claims against Vanguard.

Those are not merely background facts. Resolution of the threshold questions concerning what contractual rights accompanied parking—including authorization concerning vehicle information, parking charges, dispute mechanisms, and the enforceability of those terms—can materially affect the claims asserted against the other Defendants.

That makes *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 143 (D.D.C. 2007), instructive. There the court stayed claims involving nonsignatories where the proceedings rested on substantially overlapping facts and theories and a stay would prevent inefficient parallel adjudication.

At minimum, there is a particularly strong reason for a temporary stay while this Court resolves **arbitrability itself**. Under *Jin*, any § 4 proceeding must be prompt and limited. A short stay through that threshold determination does not present the indefinite delay that concerned the court in *Trilogy*. It prevents the anomalous situation in which merits and class proceedings accelerate against one group of Defendants while the Court is simultaneously determining whether the same underlying transactions must be arbitrated as to Vanguard.

If the Court declines to stay the claims against the remaining Defendants in full, it should at least stay:

1. all merits, class-certification, and class discovery against Vanguard;
2. discovery directed to Vanguard concerning the merits of claims subject to the pending arbitration motion; and
3. any discovery or motion practice against other Defendants that would effectively circumvent the stay by requiring Vanguard to litigate the merits indirectly.

The FAA's stay would have little practical value if Plaintiffs could obtain through third-party or overlapping discovery the same merits litigation that § 3 and § 4 require to be deferred.

## VII. THE COURT SHOULD COMPEL ARBITRATION ON THE PRESENT RECORD OR HOLD THE MOTION IN ABEYANCE AND PROMPTLY TRY THE DISPUTED FORMATION ISSUES.

Vanguard's principal request remains enforcement now.

The evidence establishes written facility agreements; language expressly defining the conduct constituting assent; Plaintiffs' personal entry and parking at the respective facilities; broad arbitration provisions; notice-specific website activity by all three Plaintiffs; and a checkbox-controlled submission by Albright.

Plaintiffs' subjective testimony that they did not see or read the posted agreements does not require denial where the applicable law evaluates objective notice and conduct.

But Plaintiffs have now supplemented the record with evidence concerning the physical layout of the garages, the placement and visibility of the contract signs, and later versions of Vanguard's website. If the Court concludes that this evidence creates a genuine dispute concerning a material formation fact, the answer is prescribed by § 4 and *Jin*.

The Court should hold the Motion in abeyance and promptly resolve only the disputed formation questions. Those issues include, to the extent necessary:

1. the signage in place at 1515 New York Avenue when Sullivan parked and whether its physical presentation provided objectively reasonable notice;

2. the signage in place at 275 West Street when Vaillant and Albright parked and whether its physical presentation provided objectively reasonable notice;
3. the historical notice-search interface presented to each Plaintiff on the dates of his or her website activity;
4. the assent mechanism completed by Albright when she submitted her April 19, 2026 dispute; and
5. only if material to the Court's disposition, the version of the online Terms presented on the relevant dates and the effect of their express incorporation and ratification of the applicable facility Parking Agreement.

The Court need not conduct merits discovery to answer any of those questions. Any discovery should be limited to formation and conducted on an expedited basis.

Most importantly, the Court should not adopt Plaintiffs' requested procedure—resolve disputed formation facts against Vanguard on the papers and then proceed immediately into merits and class litigation. That is the procedure *Jin* vacated.

**CONCLUSION**

For the foregoing reasons and those stated in Vanguard's opening memorandum, the Court should grant Defendant Vanguard Parking Solutions, Inc.'s Motion to Compel Arbitration and Stay Proceedings, compel each Plaintiff to arbitrate the claims covered by the applicable arbitration agreement on an individual basis, and stay proceedings against Vanguard pending arbitration.

With respect to Vaillant and Albright, the Court should enforce the 275 Parking Agreement according to its terms, including its express exception for a claim for injunctive relief, while compelling covered noninjunctive claims to individual arbitration.

The Court should also exercise its discretion to stay overlapping proceedings against the remaining Defendants pending resolution of the threshold arbitrability issues and, as appropriate, the resulting arbitration.

Alternatively, if the Court determines that Plaintiffs have produced evidence creating a genuine dispute concerning a material issue of formation or assent, the Court should hold Vanguard's Motion in abeyance, permit only such narrowly tailored formation discovery as is necessary, promptly conduct the trial required by 9 U.S.C. § 4, and stay all merits and class proceedings against Vanguard in the interim.

Respectfully Submitted,

Dated: August 24, 2026

PARKER POE ADAMS & BERNSTEIN LLP

By: /s/ Joseph F. Fiorill

Joseph F. Fiorill (D.C. Bar No. 995900)
900 7th Street NW, Suite 700
Washington DC 20001
(202) 854-2819 / (202) 217-2771 (facsimile)
joefiorill@parkerpoe.com

KNIGHT LAW, P.A.

Jeremy I. Knight (D.C. Bar No. 90036942; Fla. Bar No. 1009132) (*Pro hac vice* application to be submitted)
Shlomo Y. Hecht (D.C. Bar No. 90013364; Fla. Bar No. 127144) (*Pro hac vice* application to be submitted)
4624 Hollywood Blvd., Suite 203
Hollywood FL 33021
(786) 480-0045
yirmi@knightlawfl.com
sam@knightlawfl.com